UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

S.W., et al.,

              Plaintiffs,         <u>ORDER</u>

       - against -            CV 2009-1777 (ENV)(MDG)

CITY OF NEW YORK, et al.,

              Defendants.

- - - - - - - - - - - - - - - - - -X

Defendant City of New York moves to preclude the rebuttal report of plaintiffs' expert Mark E. Safarik and the rebuttal/supplemental reports of plaintiffs' experts Henry Gunn and Peg McCartt Hess. See ct. doc. 296.

## **BACKGROUND**

Plaintiffs, who were classified as special needs children, bring this civil rights action against the City of New York (the "City"), the New York City Administration for Children's Services ("ACS") and several foster care agencies to recover damages for the severe abuse they suffered at the hands of their foster care and adoptive mother, Judith Leekin, with whom they were placed between 1986 and 1994. Ms. Leekin used different names and identities to accomplish her fraudulent scheme and, after adopting the plaintiffs, collected approximately $1.68 million in adoption subsidies.

On or about December 3, 2010, plaintiffs served the reports

of two experts, Mr. Gunn and Dr. Hess.  Dr. Hess, a child welfare consultant, concludes in her report that the failures in management and case practice of ACS, formerly the Child Welfare Administration, and the private foster care agencies enabled Leekin to perpetrate her fraudulent scheme.  Mr. Gunn, also a child welfare consultant, assesses the organizational structure and management of ACS from 1984 to 1996 and opines that the systemic problems resulted in the injuries to the plaintiffs.

On January 7, 2011, the City requested an extension of time to serve its expert reports, in part, because fact discovery had not been completed.  See ct. doc. 273.  Plaintiffs responded that any extension of time should be conditioned on plaintiffs' experts having the opportunity to supplement their opinions based on discovery that had not yet been produced.  See ct. doc. 275.  By letter dated January 26, 2011, the City informed the Court that the parties had agreed to extend the time to serve defendants' expert reports but the letter does not mention whether any agreement was reached regarding the supplementation of plaintiffs' expert reports.  See ct. doc. 278.

Defendants later served expert reports on March 16, 2011, including a report by Gregory D. Meacham and a report by Dr. Roger Depue.  Mr. Meacham discusses the criminal aspects of Leekin's fraud and her abilities as a criminal fraudster.  Dr. Depue also discusses Leekin's criminal means and methods and, from a behavioral sciences perspective, her capacity to have defrauded

-2-

several organizations and individuals.

On March 28, 2011, plaintiffs filed a letter informing the Court that the parties had agreed to amend the expert discovery schedule extending defendants' time to serve their remaining expert reports and setting a date, June 16, 2011, for plaintiffs to serve rebuttal expert reports regarding issues of criminology and Leekin's criminal activities. Defendants reserved their right to object that any rebuttal report would be improper. <u>See</u> ct. doc. 285.

On or about April 11, 2011 and April 13, 2011, respectively, the foster care agencies and the City served the reports of Elaine M. Walsh and Richard P. Barth. Dr. Walsh finds that the agencies followed prescribed procedures for certifying and monitoring Leekin's foster home. Dr. Barth states that the fraudulent activities of Leekin were so anomalous that a typical child welfare agency would not have been expected to detect them. Dr. Barth also opines that the systemic problems identified by the plaintiffs' experts were similar to those occurring in other similar jurisdictions.

On June 14, 2011, plaintiffs served a rebuttal expert report of Mark E. Safarik, who had not previously been identified by plaintiffs as an expert. Plaintiffs also served rebuttal/supplemental expert reports of Mr. Gunn and Dr. Hess, which plaintiffs argue, respond to the reports of Dr. Barth and Dr. Walsh. Defendants have challenged the propriety of all three

reports.

**DISCUSSION**

Rule 26(a)(2)(B)(I) of the Federal Rules of Civil Procedure requires that an expert's initial report contain "a complete statement of all opinions the witness will express and the basis and reasons for them," while Rule 26(a)(2)(C)(ii) allows the admission of rebuttal testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . ." Fed. R. Civ. P. 26(a)(2). "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." Crowley v. Chait, 322 F. Supp. 2d 530, 551 (D.N.J. 2004).

Rule 26(e) requires that disclosures made pursuant to Rule 26(a), including expert disclosures, be supplemented when the party who made the disclosure "learns that in some material respect the disclosure . . . is incomplete or incorrect . . . ." Fed. R. Civ. P. 26(e). "It is only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete, that the duty to supplement arises." Sandata Techs., Inc. v. Infocrossing, Inc., 2007 WL 4157163, at *3-*4 (S.D.N.Y. 2007).

Safarik Report

Mr. Safarik directly disputes the conclusions of Mr. Meacham and Dr. Depue as to the degree of criminal sophistication

-4-

demonstrated by Leekin.  Mr. Meacham states that Judith Leekin was "a sophisticated con artist who is expert in the psychological manipulation of her victims."  Meacham Report at 4.  Similarly, Dr. Depue offers the opinion that Leekin is a "sophisticated and highly organized serial criminal," Depue Report at 1, and "she would have been very difficult to detect by anyone who had not been trained in fraud investigation, the detection of deception and the characteristics of a psychopathic manipulator," id. at 11.  In response, Mr. Safarik states that "Leekin was not, as Meacham and Roger Depue opine, a sophisticated criminal mastermind impervious to detection.  A review of the record clearly reflects that Judith Leekin was reckless, disorganized and lacked a high level of sophistication."  Safarik Report at 2.

Mr. Safarik's report contains quintessential rebuttal testimony to that of the defendants' experts.  The City argues that "[t]estimony from Mr. Safarik to the effect that Ms. Leekin's fraud was 'easily' or 'readily' detectable belongs in their case in chief, and is not appropriately a rebuttal issue."  See ct. doc. 296.  However, Mr. Safarik's report is not focused on "the existence of an unconstitutional policy, practice or custom concerning the vetting and supervision of foster parents" as the City describes plaintiffs' burden on their case-in-chief.  Rather, Mr. Safarik directly contradicts the defendants' experts' opinions that Leekin was a criminal mastermind who was so sophisticated in her schemes that the City could not have been expected to protect

-5-

the plaintiffs against them. Mr. Safarik describes Leekin as "sloppy" and lists several examples of instances where Leekin's lapses created opportunities for the City to have detected her criminal conduct. Contrary to the City's claims, I do not find that Mr. Safarik's report is an effort by plaintiffs to "game" the system.

The City further objects to Mr. Safarik's reliance on a study on welfare fraud as injecting a new issue. Although the procedures used by the City to combat welfare fraud were not discussed in the reports of defendants' experts, Mr. Meacham recognizes in his report that "there is an issue of whether or not it would have been feasible under then-existing disclosure and privacy laws for ACS, the agencies, or New York State to somehow verify names with SSNs during the relevant time period." Meacham Report at 74. Dr. Walsh states that "there was no way that the agencies would have been able to learn about the various identities [Leekin] used to foster and then adopt the plaintiffs." Walsh Report at 5. Mr. Safarik's reliance on a City report that states that the City had the ability to conduct Social Security Number verification checks in the welfare context is appropriate rebuttal testimony. Such testimony supports the opposite conclusion than reached by defendants' experts but concerns the "same subject matter" as the testimony of defendants' experts. Cf. Park West Radiology v. CareCore Nat., LLC, 675 F. Supp. 2d 314, 325-26 (S.D.N.Y. 2009) (permitting rebuttal report that uses

new methodologies); Scientific Components Corp. v. Sirenza Microdevices, Inc., 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008) ("technical information . . . that was not previously the subject of expert testimony in this litigation . . . is not out of place in a rebuttal report"); TC Sys. Inc. v. Town of Colonie, 213 F. Supp. 2d 171, 180 (N.D.N.Y. 2002) (permitting rebuttal expert to use different methodology).

Gunn and Hess Reports

The Gunn and Hess reports are also directly targeted at rebutting the reports of defendants' experts. See Crowley, 322 F. Supp. 2d at 551. Defendants' experts explain the City's failure to uncover Leekin's fraud, in part, by claiming that foster care workers are not trained in fraud detection and the City had no reason to think that such training was necessary. In their rebuttal reports, Hess and Gunn argue that even if foster care workers were not trained to detect fraud, the City was on notice that foster parents sometimes harmed the children placed with them and that the City had to screen foster parents carefully to prevent that from happening. Specifically, Mr. Gunn opines that as part of their obligation to evaluate foster and adoptive parent applicants and monitor foster care placements, the case workers were required to verify information provided by applicants. Mr. Gunn points to a City report on welfare fraud as evidence that the City was able to match information regarding recipients of welfare benefits with Social Security and SSI files. Mr. Gunn also

references letters received by counsel for plaintiffs from the Social Security Administration which he argues confirm his recollection that during the relevant time period the City could have verified Social Security numbers provided by foster and adoptive parent applicants.

Similarly, Dr. Hess responds to the defendants' expert reports by elaborating that the rigorous screening and monitoring necessary to protect the children should have included verification of the names and Social Security numbers provided by foster and adoptive parent applicants.  Dr. Hess also cites the letters from the Social Security Administration and the study on welfare fraud as evidence that ACS could have requested such information from the local Social Security offices.  To the extent that plaintiffs' experts disclose new opinions that were not included in their original reports, they are clearly responsive to defendants' experts' reports and do not cause prejudice or surprise to the City.  See Park West Radiology v. CareCore Nat. LLC, 675 F. Supp. 2d 314, 326 (S.D.N.Y. 2009).

The City argues that these "rebuttal" opinions should have been disclosed in plaintiffs' experts' initial reports.  However, the rules do not require an expert to anticipate every argument made by an opposing expert or risk preclusion.  See Scientific Components, 2008 WL 4911440, at *3 n.2.  As to the supplementary portion of their reports, both experts discuss letters from the Social Security Administration and the study on welfare fraud that

had not been produced at the time they served their initial reports. Since this constitutes information that was previously unknown or unavailable to them, those portions of their reports are proper supplementation.

In any event, as discussed in a previous ruling, "exclusion of expert testimony is a drastic remedy." Lab Crafters, Inc. v. Flow Safe, Inc., 2007 WL 7034303, at *2 (S.D.N.Y. 2007); RMED Int'l, Inc. v. Sloan Supermarkets, Inc., 2002 WL 31780188, at *3 (S.D.N.Y. 2002). Courts in the Second Circuit consider the factors set forth in Softel, Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955 (2d Cir. 1997), for determining whether to preclude expert testimony. These factors are: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Softel, 118 F.3d at 961 (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)); see also Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2004). Even assuming that portions of plaintiffs' experts' reports should have been included in their initial reports, there is no prejudice to the City by permitting plaintiffs' experts to serve these reports since expert depositions have not been taken and no trial date has been set. Further, defendants are granted leave to serve sur-rebuttal reports by their experts if they deem it necessary. See

Park West, 675 F. Supp. 2d at 326 (denying motion to exclude expert report where party seeking preclusion could redepose expert and submit sur-rebuttal report).

## CONCLUSION

For the foregoing reasons, the City defendant's motion to preclude the three expert reports is denied. The schedule for limited discovery on welfare and additional expert reports is set as discussed at the hearing on this motion.

**SO ORDERED.**

Dated:  Brooklyn, New York
        July 25, 2011

                                   /s/
                        MARILYN D. GO
                        UNITED STATES MAGISTRATE JUDGE