# (Composite)

# EXHIBIT

# "M"

Plaintiff's Motion to Approve Settlement and for
Disbursement of Costs Held in Escrow

**Exhibit "M-1"**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into this _____ day of _____, by and between:

"Plaintiff"    RE ████████████████████████████
████████████████

"Defendants"   St. Joseph Services for Children, Inc. f/k/a Catholic Child Care Society of the Diocese of Brooklyn, Inc., Heartshare Human Services f/k/a Catholic Guardian Society of the Diocese of Brooklyn, Inc. and SCO Family of Services f/k/a St. Cristopher-Ottilie

"Payors"       National Union Fire Insurance Company of Pittsburgh, PA and Illinois National Insurance Company

## RECITALS

A.    Plaintiff filed a complaint under the initials R.E. against Defendants in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG, (the "Complaint"), which Complaint arose out of certain alleged negligent acts or omissions by Defendants.  In the Complaint, Plaintiff sought to recover monetary damages as a result of his placement in foster care and subsequent adoption by Judith Leekin which resulted in physical and personal injuries to Plaintiff.

B.    Payors are the liability insurers of the Defendants, and as such, would be obligated to pay any claim made or judgment obtained against Defendants which is covered by their policies with Defendants.

C.    The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint, upon the terms and conditions set forth below.

## AGREEMENT

The parties agree as follows:

**1.0    Release and Discharge**

1.1    In consideration of the payments set forth in Section 3, and in consideration of the settlement of the action described below and in Recital A above, Plaintiff does hereby release and forever discharge Defendants, Payors, Roman Catholic Diocese of Brooklyn, New York, all of its parishes, officers, Agents, Employees, any Individual who served as

Diocesan Bishop, Vicar General, Chancellor and all of their respective affiliates, employees, agents, religious personnel, lay personnel, teachers, counselors, successors and assigns, any insurers and reinsurers, known or unknown, and said parties' past, present and future officers, corporate parents, subsidiaries and affiliates, and their present, former and future owners, shareholders, directors, officers, partners, agents, trustees, administrators, servants, representatives, employees, predecessor and successor legal entities, predecessor and successors in interest, attorneys, insurers and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including, whether presently known or unknown, all other tortfeasors liable or claimed to be liable jointly with the Defendants; and, whether presently known or unknown, all other potential or possible tortfeasors liable or claimed to be liable jointly with the Defendants (hereinafter referred to collectively as "Released Parties"), each of them of and from any and all past, present or future actions, causes of action, wrongful death claims, accounts, agreements, bonds, bills, covenants, contracts, controversies, claims, rights, damages, costs, losses of services, demands, debts, dues, extents, executions, expenses, judgments, liabilities, liens, obligations, promises, predicate acts, reckonings, specialties, suits, sums of money, compensation, trespasses, variances and compensation of any nature whatsoever, whether known or unknown, whether based in tort, contract, in law, admiralty or equity, or other theory of recovery, and whether for compensatory or punitive damages, which against any of them the Plaintiff, and his heirs, executors, administrators, successors and assigns hereafter, and each of them, ever had now has or claims to have, or which may hereafter accrue or otherwise be acquired, for upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Settlement Agreement and Release, including, without limiting the foregoing, the matters alleged in the Complaint (and all related pleadings) in the action entitled S.W., et al. v. City of New York, et al., in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG.

1.2     This release, on the part of the Plaintiff shall be a fully binding and complete settlement between the Plaintiff and the Released Parties and their respective heirs, assigns and successors.

1.3     The Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release.  Plaintiff expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Settlement Agreement.  Plaintiff further agrees that he has accepted payment of the sums specified herein as a complete compromise of matters involving

disputed issues of law and fact. Plaintiff assumes the risk that the facts or law may be other than Plaintiff believes. It is understood and agreed to by the parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants, by whom liability is expressly denied.

**2.0   CONSIDERATION OF MEDICARE'S INTERESTS IN SETTLEMENT PURSUANT TO 42 C.F.R. SECTIONS 411.46, 411.47 AND THE MEDICARE INTERMEDIARY MANUAL (MEDICARE ADDENDUM)**

2.1   This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

2.2   Plaintiff acknowledges his duty to cooperate with Defendants in order to allow the Responsible reporting entities to fulfill the obligation to comply with Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 (MMSEA). Plaintiff and his attorney agree to provide Defendants with any and all information necessary for Defendants or Payors to comply with Section 111 of the MMSEA.

2.3   In further consideration for the Settlement Agreement and Release to which this Medicare Addendum is included and incorporated herein, Defendants, Payors and their attorneys rely on the following representations and warranties made by Plaintiff and his attorneys and the parties agree that all representations and warranties made herein shall survive settlement.

    i.   Plaintiff in this case is not a Medicare Beneficiary as of the date of this release, nor does plaintiff anticipate becoming a Medicare Beneficiary within 30 months of the date of this release. Because the Plaintiff is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare for any medical treatment plaintiff has received as a result of the allegations in the Complaint.

    ii.   Any future medical treatment related to the accident, injuries, or illnesses giving rise to this settlement, and/or arising from or related to the matters forming the basis of the claims by Plaintiff is the sole responsibility of Plaintiff, and will be paid for with the settlement proceeds and will under no circumstances be submitted as claims to Medicare.

2.4     Plaintiff represents and warrants that all bills, costs or liens resulting from or arising out of Plaintiff's alleged injuries, claims or lawsuit are Plaintiff's responsibility to pay. Plaintiff agrees to assume responsibility for satisfaction of any and all rights to payment, claims or liens of any kind (including Medicaid), that arise from or are related to payments made or services provided to Plaintiff or on Plaintiff's behalf. Plaintiff agrees to assume responsibility for all expenses, costs or fees incurred by Plaintiff related to his alleged injuries, claims or lawsuit including without limitation, all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity. Further, Plaintiff hereby agrees to indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys or representatives harmless from any and all damages, claims and rights to payment, including any attorney's fees, brought by any person, entity or governmental agency to recover any of these amounts.

2.5     Plaintiff and Plaintiff's attorneys further represent and warrant that they are aware of no Medicare conditional payments that have been made on Plaintiff's behalf.  Plaintiff and Plaintiff's attorneys agree to exercise best efforts to obtain a letter from Medicare to this effect and provide the same to Defendants' attorneys.  In the alternative, and only after exercising best efforts to obtain a zero dollar conditional payment letter from Medicare, Plaintiff and Plaintiff's attorneys agree to provide Defendants' attorneys with a letter certifying that Plaintiff's attorneys have exercised due diligence and, to the best of their knowledge, no liens of any governmental entities including Medicare conditional payments exist.

2.6     Plaintiff will indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys harmless from any and all claims, liens (including Medicaid), Medicare conditional payments and rights to payment, known or unknown.  If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple damages, from Defendants, Payors their attorneys or representatives relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiff's alleged injuries, claims or lawsuit, Plaintiff will defend and indemnify Defendants, Payors, any other insurers and reinsurers their attorneys and representatives, and hold them harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

2.7     While it is impossible to accurately predict the need for medical treatment, the parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to

shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec 1935y(b). The parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

2.8     Plaintiff further agrees to waive any and all future actions against Defendants, Payors, any other insurers and reinsurers, their attorneys and representatives, including but not limited to any private cause of action for damages pursuant to 42 U.S.C. §1395y(b)(3)(A) et seq.

## 3.0     Payments

In consideration of the release set forth above, the Payors on behalf of the Defendants agree to pay to the individual named below (the "Payee") the sums outlined in this section 3 below, contingent upon receiving court approval from the Circuit Court for St. Lucie County, Florida, Probate Division:

3.1     Payments due at the time of settlement as follows:

Cash at settlement: $1,008,823.58 by September 10, 2014, subject to receipt of this executed Settlement Agreement and Release and fully executed closing documents as set forth in the Mediation Agreement dated June 13, 2014.

3.2     Periodic payments made according to the schedule as follows (the "Periodic Payments"):

Payee: ███████████████████

The ████████████████████████████ will be the irrevocable payee of all periodic payments during the lifetime of ███████████████

Life Certain Annuity: $16,700.00 for life, payable quarterly, guaranteed for 20 years, beginning on 10/10/2029, with the last guaranteed payment on 07/10/2049 from New York Life Insurance Company.

Period Certain Annuity: $16,700.00 payable quarterly, guaranteed for 15 years, beginning on 10/10/2014, with the last guaranteed payment on 07/10/2029 from Pacific Life & Annuity Company.

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104 (a) (2) of the Internal Revenue Code of 1986, as amended.

Notice is being provided to the Plaintiff and Payee and their Legal Representative pursuant to New York General Obligation Law § 5-1702 that there are no costs to be deducted from the periodic payments and the Plaintiff and Payee are advised to obtain independent professional advice relating to the legal, tax and financial implications of the settlement, including any adverse consequences.

**4.0     Plaintiff's Rights of Payments**

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee; nor shall the Plaintiff or Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

**5.0     Plaintiff's Beneficiary**

Any payments to be made after the death of any Payee pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff to the Payors or the Payors' Assignees, as defined below.  If no person or entity is so designated by Plaintiff, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee.  No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Payors or the Payors' Assignees.  The Designation must be in a form acceptable to the Payor or the Payors' Assignees before such payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

The beneficiary will receive 100% of the remaining guaranteed periodic payments in a lump sum. The commuted value will be equal to 94% of the cost of the Certificate that would provide for all guaranteed payments that have been commuted. We will compute the cost using the annuity rated in effect on the date of the death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable.

If annuity rated are not available, the commuted value shall be the present value of the commuted payments, discounted at the yield of the longest Treasury Constant Maturity Rate as published by the Federal Reserve at the close of business on the date of death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable, plus one percent. If this date is not a business day, then the rates reported on the next business day will be used



Any Payments made after the death of ███████████████ will be paid to the ███████████ ███████████████ Trust in a single lump sum.  The single lump sum will be equal to 95% of the cost of an annuity contract, based on Pacific Life Insurance Company's structured settlement rates in effect on the date of death, which would provide benefits equal to 100% of the remaining guaranteed payments.

If such annuity rates are not available, the commuted value shall be the present value of the remaining guaranteed payments calculated using the following interest rate: the

annual effective yield based on the current bid price as reported in the Wall Street Journal for the highest yielding U.S. Treasury Note or Bond with a maturity date not exceeding the Rider Expiry Date available at the close of business on the date of ████████████ death plus one percent. If this date is not a business day, the rates reported on the next following business day will be used.

**6.0    Consent to Qualified Assignment**

6.1    Plaintiff acknowledges and agrees that the Defendants and/or Payors may make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or Payors' liability to make the Periodic Payments set forth in Section 3.2 to New York Life Insurance & Annuity Corporation and Pacific Life & Annuity Services, Inc. ("The Assignees"). The Assignees' obligations for payment of the Periodic Payments shall be no greater than that of Defendants and/or Payors (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligations.

6.2    Any such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendants and the Payors from the Periodic Payments obligation assigned to the Assignees. The Plaintiff recognizes that, in the event of such an assignment, the Assignees shall be the sole obligors with respect to the Periodic Payments obligations, and that all other releases with respect to the Periodic Payments obligations that pertain to the liability of the Defendants and the Payors shall thereupon become final, irrevocable and absolute.

**7.0    Right to Purchase an Annuity**

The Defendants and/or the Payors, themselves or through their Assignees reserve the right to fund the liability to make the Periodic Payments outlined in Section 3.2 through the purchase of annuity policies from New York Life Insurance Company and Pacific Life & Annuity Corporation. The Defendants, the Payors or the Assignees shall be the sole owner of the annuity policies and shall have all rights of ownership. The Defendants, the Payors, or the Assignees may have New York Life Insurance Company and Pacific Life & Annuity Corporation mail payments directly to the Payee. The Plaintiff shall be solely responsible for maintaining a current mailing address for the Payee with the Assignees.

**8.0    Discharge of Obligation**

The obligation of the Defendants, the Payors and/or Assignees to make each periodic Payment shall be discharged upon the mailing of a valid check in the amount of such

payment to the designated address of the Payee named in Section 3.0 of this Settlement Agreement.

**9.0      Delivery of Dismissal with Prejudice**

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiff shall deliver to counsel for the Defendants or counsel for the Payors an executed Stipulation of Voluntary Dismissal with Prejudice Pursuant to FRCP 41(a)(1)(A)(ii).  Plaintiff hereby authorizes counsel for the Defendants and/or counsel for the Payors to file said Stipulation with the Court and enter it as a matter of record once all upfront cash payments have been made and annuities funded as called for in this Settlement Agreement and Release.

**10.0     Representation of Comprehension of Document**

In entering into this Settlement Agreement, the Plaintiff represents that Plaintiff has relied upon the advice of his attorneys, who are the attorneys of his own choice, concerning the legal consequences of this Settlement Agreement and Release; that the terms of this Settlement Agreement and Release have been completely read and explained to Plaintiff by his attorneys; and the terms of the Settlement Agreement and Release are fully understood and voluntarily accepted by Plaintiff.

**11.0.    Warranty of Capacity to Execute Agreement**

Plaintiff represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release, except as otherwise set forth herein; that Plaintiff has the sole right and exclusive authority to execute this Settlement Agreement and Release and receive the sums specified in it; and that Plaintiff has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release.

**12.0     Governing Law**

This Settlement Agreement and Release shall be construed and interpreted in accordance with the laws of the State of New York.

**13.0     Additional Documents**

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement and Release.

**14.0    Entire Agreement and Successors in Interest**

This Settlement Agreement and Release contains the entire agreement between the Plaintiff, the Defendants and the Payors with regard to the matters set forth in it and shall be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

**15.0    Effectiveness**

This Settlement Agreement and Release shall become effective immediately following execution by each of the parties.

Plaintiff: _____

████████████████████████████████████████████████

Date:_____

STATE OF FLORIDA          )
COUNTY OF _____      ) ss:

On the ____ day of _____, 2014 before me, the undersigned, a notary public in and for said state, personally appeared ████████████████, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within SETTLEMENT AGREEMENT and RELEASE, and acknowledged to me that she executed the same in her capacity, and that by her signature on the SETTLEMENT AGREEMENT and RELEASE, the individual, or the person upon behalf of whom the individual acted, executed the SETTLEMENT AGREEMENT AND RELEASE.

Sworn to before me this
_____ day of _____, 20____


_____
         Notary Public

Plaintiff's Attorney:       _____

                    By:_____

            Address:       _____

                                _____

                    Date:    _____

Payors:  National Union Fire Insurance Company of Pittsburgh, PA
         Illinois National Insurance Company

                    By:_____

                    Date:_____

**Exhibit "M-2"**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into this _____ day of _____, by and between:

"Plaintiff"    SB
█████████████████████████████████████████
█████████████████████████████████████████

"Defendants"   St. Joseph Services for Children, Inc. f/k/a Catholic Child Care Society of the Diocese of Brooklyn, Inc., Heartshare Human Services f/k/a Catholic Guardian Society of the Diocese of Brooklyn, Inc. and SCO Family of Services f/k/a St. Cristopher-Ottilie

"Payors"    National Union Fire Insurance Company of Pittsburgh, PA and Illinois National Insurance Company

### RECITALS

A.    Plaintiff filed a complaint under the initials S.B. against Defendants in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG, (the "Complaint"), which Complaint arose out of certain alleged negligent acts or omissions by Defendants. In the Complaint, Plaintiff sought to recover monetary damages as a result of his placement in foster care and subsequent adoption by Judith Leekin which resulted in physical and personal injuries to Plaintiff.

B.    Payors are the liability insurers of the Defendants, and as such, would be obligated to pay any claim made or judgment obtained against Defendants which is covered by their policies with Defendants.

C.    The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint, upon the terms and conditions set forth below.

### AGREEMENT

The parties agree as follows:

### 1.0    Release and Discharge

1.1    In consideration of the payments set forth in Section 3, and in consideration of the settlement of the action described below and in Recital A above, Plaintiff does hereby release and forever discharge Defendants, Payors, Roman Catholic Diocese of Brooklyn, New York, all

of its parishes, officers, Agents, Employees, any Individual who served as Diocesan Bishop, Vicar General, Chancellor and all of their respective affiliates, employees, agents, religious personnel, lay personnel, teachers, counselors, successors and assigns, any insurers and reinsurers, known or unknown, and said parties' past, present and future officers, corporate parents, subsidiaries and affiliates, and their present, former and future owners, shareholders, directors, officers, partners, agents, trustees, administrators, servants, representatives, employees, predecessor and successor legal entities, predecessor and successors in interest, attorneys, insurers and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including, whether presently known or unknown, all other tortfeasors liable or claimed to be liable jointly with the Defendants; and, whether presently known or unknown, all other potential or possible tortfeasors liable or claimed to be liable jointly with the Defendants (hereinafter referred to collectively as "Released Parties"), each of them of and from any and all past, present or future actions, causes of action, wrongful death claims, accounts, agreements, bonds, bills, covenants, contracts, controversies, claims, rights, damages, costs, losses of services, demands, debts, dues, extents, executions, expenses, judgments, liabilities, liens, obligations, promises, predicate acts, reckonings, specialties, suits, sums of money, compensation, trespasses, variances and compensation of any nature whatsoever, whether known or unknown, whether based in tort, contract, in law, admiralty or equity, or other theory of recovery, and whether for compensatory or punitive damages, which against any of them the Plaintiff, and his heirs, executors, administrators, successors and assigns hereafter, and each of them, ever had now has or claims to have, or which may hereafter accrue or otherwise be acquired, for upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Settlement Agreement and Release, including, without limiting the foregoing, the matters alleged in the Complaint (and all related pleadings) in the action entitled S.W., et al. v. City of New York, et al., in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG.

1.2     This release, on the part of the Plaintiff shall be a fully binding and complete settlement between the Plaintiff and the Released Parties, and their respective heirs, assigns and successors.

1.3     The Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release.  Plaintiff expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Settlement Agreement.  Plaintiff further agrees that he has accepted payment of the

00701353.2                                          2

sums specified herein as a complete compromise of matters involving disputed issues of law and fact. Plaintiff assumes the risk that the facts or law may be other than Plaintiff believes. It is understood and agreed to by the parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants, by whom liability is expressly denied.

**2.0    CONSIDERATION OF MEDICARE'S INTERESTS IN SETTLEMENT PURSUANT TO 42 C.F.R. SECTIONS 411.46, 411.47 AND THE <u>MEDICARE INTERMEDIARY MANUAL (MEDICARE ADDENDUM)</u>**

2.1    This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

2.2    Plaintiff acknowledges his duty to cooperate with Defendants in order to allow the Responsible reporting entities to fulfill the obligation to comply with Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 (MMSEA). Plaintiff and his attorney agree to provide Defendants with any and all information necessary for Defendants or Payors to comply with Section 111 of the MMSEA.

2.3    In further consideration for the Settlement Agreement and Release to which this Medicare Addendum is included and incorporated herein, Defendants, Payors and their attorneys rely on the following representations and warranties made by Plaintiff and his attorneys and the parties agree that all representations and warranties made herein shall survive settlement.

i.    Plaintiff in this case is not a Medicare Beneficiary as of the date of this release, nor does plaintiff anticipate becoming a Medicare Beneficiary within 30 months of the date of this release. Because the Plaintiff is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare for any medical treatment plaintiff has received as a result of the allegations in the Complaint.

ii.    Any future medical treatment related to the accident, injuries, or illnesses giving rise to this settlement, and/or arising from or related to the matters forming the basis of the claims by Plaintiff is the sole responsibility of Plaintiff, and will be paid for with the settlement proceeds and will under no circumstances be submitted as claims to Medicare.

2.4    Plaintiff represents and warrants that all bills, costs or liens resulting from or arising out of Plaintiff's alleged injuries, claims or lawsuit are Plaintiff's responsibility to pay. Plaintiff agrees to assume responsibility for satisfaction of any and all rights to payment, claims or liens of any kind (including Medicaid), that arise from or are related to payments made or services provided to Plaintiff or on Plaintiff's behalf. Plaintiff agrees to assume responsibility for all expenses, costs or fees incurred by Plaintiff related to his alleged injuries, claims or lawsuit including without limitation, all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity. Further, Plaintiff hereby agrees to indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys or representatives harmless from any and all damages, claims and rights to payment, including any attorney's fees, brought by any person, entity or governmental agency to recover any of these amounts.

2.5    Plaintiff and Plaintiff's attorneys further represent and warrant that they are aware of no Medicare conditional payments that have been made on Plaintiff's behalf.  Plaintiff and Plaintiff's attorneys agree to exercise best efforts to obtain a letter from Medicare to this effect and provide the same to Defendants' attorneys.  In the alternative, and only after exercising best efforts to obtain a zero dollar conditional payment letter from Medicare, Plaintiff and Plaintiff's attorneys agree to provide Defendants' attorneys with a letter certifying that Plaintiff's attorneys have exercised due diligence and, to the best of their knowledge, no liens of any governmental entities including Medicare conditional payments exist.

2.6    Plaintiff will indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys harmless from any and all claims, liens (including Medicaid), Medicare conditional payments and rights to payment, known or unknown.  If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple damages, from Defendants, Payors their attorneys or representatives relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiff's alleged injuries, claims or lawsuit, Plaintiff will defend and indemnify Defendants, Payors, any other insurers and reinsurers their attorneys and representatives, and hold them harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

2.7    While it is impossible to accurately predict the need for medical treatment, the parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to

shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec 1935y(b). The parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

2.8    Plaintiff further agrees to waive any and all future actions against Defendants, Payors, any other insurers and reinsurers, their attorneys and representatives, including but not limited to any private cause of action for damages pursuant to 42 U.S.C. §1395y(b)(3)(A) et seq.

## 3.0    Payments

In consideration of the release set forth above, the Payors on behalf of the Defendants agree to pay to the individual named below (the "Payee") the sums outlined in this section 3 below, contingent upon receiving court approval from the Circuit Court for St. Lucie County, Florida, Probate Division:

3.1    Payments due at the time of settlement as follows:

Cash at settlement: $927,126.94 by September 10, 2014, subject to receipt of this executed Settlement Agreement and Release and fully executed closing documents as set forth in the Mediation Agreement dated June 13, 2014.

3.2    Periodic payments made according to the schedule as follows (the "Periodic Payments"):

Payee: ███████████████████████████████████████████

The ███████████████████████████████████ will be the irrevocable payee of all periodic payments during the lifetime of ████████████████████████

Life Certain Annuity: $12,453.00 for life payable quarterly, guaranteed for 20 years, beginning on 10/10/2029, with the last guaranteed payment in 07/10/2049 from New York Life Insurance Company.

Period Certain Annuity: $12,453.00 payable quarterly, guaranteed for 15 years, beginning on 10/10/2014, with the last guaranteed payment on 07/10/2029 from Pacific Life & Annuity Company.

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104 (a) (2) of the Internal Revenue Code of 1986, as amended.

Notice is being provided to the Plaintiff and Payee and their Legal Representative pursuant to New York General Obligation Law § 5-1702 that there are no costs to be deducted from the periodic payments and the Plaintiff and Payee are advised to obtain independent professional advice relating to the legal, tax and financial implications of the settlement, including any adverse consequences.

## 4.0    Plaintiff's Rights of Payments

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee; nor shall the Plaintiff or Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

## 5.0    Plaintiff's Beneficiary

Any payments to be made after the death of any Payee pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff to the Payors or the Payors' Assignees, as defined below.  If no person or entity is so designated by Plaintiff, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee.  No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Payors or the Payors' Assignees.  The Designation must be in a form acceptable to the Payor or the Payors' Assignees before such payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

The beneficiary will receive 100% of the remaining guaranteed periodic payments in a lump sum. The commuted value will be equal to 94% of the cost of the Certificate that would provide for all guaranteed payments that have been commuted. We will compute the cost using the annuity rated in effect on the date of the death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable.

If annuity rated are not available, the commuted value shall be the present value of the commuted payments, discounted at the yield of the longest Treasury Constant Maturity Rate as published by the Federal Reserve at the close of business on the date of death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable, plus one percent. If this date is not a business day, then the rates reported on the next business day will be used

Any Payments made after the death of ███████████ will be paid to the ████████ ████████████████ Special Needs Trust in a single lump sum.  The single lump sum will be equal to 95% of the cost of an annuity contract, based on Pacific Life Insurance Company's structured settlement rates in effect on the date of death, which would provide benefits equal to 100% of the remaining guaranteed payments.

If such annuity rates are not available, the commuted value shall be the present value of the remaining guaranteed payments calculated using the following interest rate: the

annual effective yield based on the current bid price as reported in the Wall Street Journal for the highest yielding U.S. Treasury Note or Bond with a maturity date not exceeding the Rider Expiry Date available at the close of business on the date of ████████████ death plus one percent. If this date is not a business day, the rates reported on the next following business day will be used.

**6.0    Consent to Qualified Assignment**

6.1    Plaintiff acknowledges and agrees that the Defendants and/or Payors may make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or Payors' liability to make the Periodic Payments set forth in Section 3.2 to New York Life Insurance and Annuity Corporation and Pacific Life & Annuity Services, Inc. ("The Assignees"). The Assignees' obligations for payment of the Periodic Payments shall be no greater than that of Defendants and/or Payors (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligations.

6.2    Any such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendants and the Payors from the Periodic Payments obligations assigned to the Assignees. The Plaintiff recognizes that, in the event of such an assignment, the Assignees shall be the sole obligors with respect to the Periodic Payments obligations, and that all other releases with respect to the Periodic Payments obligations that pertain to the liability of the Defendants and the Payors shall thereupon become final, irrevocable and absolute.

**7.0    Right to Purchase an Annuity**

The Defendants and/or the Payors, themselves or through their Assignees reserve the right to fund the liability to make the Periodic Payments outlined in Section 3.2 through the purchase of annuity policies from New York Life Insurance Company and Pacific Life & Annuity Company. The Defendants, the Payors or the Assignees shall be the sole owner of the annuity policies and shall have all rights of ownership. The Defendants, the Payors, or the Assignees may have New York Life Insurance Company and Pacific Life & Annuity Company mail payments directly to the Payee. The Plaintiff shall be solely responsible for maintaining a current mailing address for the Payee with the Assignees.

**8.0    Discharge of Obligation**

The obligation of the Defendants, the Payors and/or Assignees to make each periodic Payment shall be discharged upon the mailing of a valid check in the amount of such

payment to the designated address of the Payee named in Section 3.0 of this Settlement Agreement.

**9.0     Delivery of Dismissal with Prejudice**

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiff shall deliver to counsel for the Defendants or counsel for the Payors an executed Stipulation of Voluntary Dismissal with Prejudice Pursuant to FRCP 41(a)(1)(A)(ii).  Plaintiff hereby authorizes counsel for the Defendants and/or counsel for the Payors to file said Stipulation with the Court and enter it as a matter of record once all upfront cash payments have been made and annuities funded as called for in this Settlement Agreement and Release.

**10.0     Representation of Comprehension of Document**

In entering into this Settlement Agreement, the Plaintiff represents that Plaintiff has relied upon the advice of his attorneys, who are the attorneys of his own choice, concerning the legal consequences of this Settlement Agreement and Release; that the terms of this Settlement Agreement and Release have been completely read and explained to Plaintiff by his attorneys; and the terms of the Settlement Agreement and Release are fully understood and voluntarily accepted by Plaintiff.

**11.0.     Warranty of Capacity to Execute Agreement**

Plaintiff represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release, except as otherwise set forth herein; that Plaintiff has the sole right and exclusive authority to execute this Settlement Agreement and Release and receive the sums specified in it; and that Plaintiff has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release.

**12.0     Governing Law**

This Settlement Agreement and Release shall be construed and interpreted in accordance with the laws of the State of New York.

**13.0     Additional Documents**

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement and Release.

**14.0     Entire Agreement and Successors in Interest**

This Settlement Agreement and Release contains the entire agreement between the Plaintiff, the Defendants and the Payors with regard to the matters set forth in it and shall

be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

**15.0    Effectiveness**

This Settlement Agreement and Release shall become effective immediately following execution by each of the parties.

Plaintiff:    _____

Patricia A. Baldwin, Limited Guardian of the Property of ▓▓▓▓▓▓▓▓

Date:_____

STATE OF FLORIDA         )
COUNTY OF _____     ) ss:

On the ___ day of _____, 2014 before me, the undersigned, a notary public in and for said state, personally appeared Patricia A. Baldwin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within SETTLEMENT AGREEMENT and RELEASE, and acknowledged to me that she executed the same in her capacity, and that by her signature on the SETTLEMENT AGREEMENT and RELEASE, the individual, or the person upon behalf of whom the individual acted, executed the SETTLEMENT AGREEMENT AND RELEASE.

Sworn to before me this
_____ day of _____, 20____

_____
       Notary Public

Plaintiff's Attorney:    _____

By:_____

Address:    _____

_____

Date:    _____

Payors:  National Union Fire Insurance Company of Pittsburgh, PA
         Illinois National Insurance Company

By:_____

Date:_____

**Exhibit "M-3"**

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Settlement Agreement") is made and entered into this _____ day of _____, by and between:

"Plaintiff"   SW ████████████████████████████████████████
          ████████████████████

"Defendants"   St. Joseph Services for Children, Inc. f/k/a Catholic Child Care Society of the Diocese of Brooklyn, Inc., Heartshare Human Services f/k/a Catholic Guardian Society of the Diocese of Brooklyn, Inc. and SCO Family of Services f/k/a St. Cristopher-Ottilie

"Payors"   National Union Fire Insurance Company of Pittsburgh, PA and Illinois National Insurance Company

### RECITALS

A.   Plaintiff filed a complaint under the initials S.W. against Defendants in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG, (the "Complaint"), which Complaint arose out of certain alleged negligent acts or omissions by Defendants. In the Complaint, Plaintiff sought to recover monetary damages as a result of his placement in foster care and subsequent adoption by Judith Leekin which resulted in physical and personal injuries to Plaintiff.

B.   Payors are the liability insurers of the Defendants, and as such, would be obligated to pay any claim made or judgment obtained against Defendants which is covered by their policies with Defendants.

C.   The parties desire to enter into this Settlement Agreement in order to provide for certain payments in full settlement and discharge of all claims which are, or might have been, the subject matter of the Complaint, upon the terms and conditions set forth below.

### AGREEMENT

The parties agree as follows:

**1.0   Release and Discharge**

1.1   In consideration of the payments set forth in Section 3, and in consideration of the settlement of the action described below and in Recital A above, Plaintiff does hereby release and forever discharge Defendants, Payors, Roman Catholic Diocese of Brooklyn, New York, all

of its parishes, officers, Agents, Employees, any Individual who served as Diocesan Bishop, Vicar General, Chancellor and all of their respective affiliates, employees, agents, religious personnel, lay personnel, teachers, counselors, successors and assigns, any insurers and reinsurers, known or unknown, and said parties' past, present and future officers, corporate parents, subsidiaries and affiliates, and their present, former and future owners, shareholders, directors, officers, partners, agents, trustees, administrators, servants, representatives, employees, predecessor and successor legal entities, predecessor and successors in interest, attorneys, insurers and assigns and all other persons, firms or corporations with whom any of the former have been, are now or may hereafter be affiliated, including, whether presently known or unknown, all other tortfeasors liable or claimed to be liable jointly with the Defendants; and, whether presently known or unknown, all other potential or possible tortfeasors liable or claimed to be liable jointly with the Defendants (hereinafter referred to collectively as "Released Parties"), each of them of and from any and all past, present or future actions, causes of action, wrongful death claims, accounts, agreements, bonds, bills, covenants, contracts, controversies, claims, rights, damages, costs, losses of services, demands, debts, dues, extents, executions, expenses, judgments, liabilities, liens, obligations, promises, predicate acts, reckonings, specialties, suits, sums of money, compensation, trespasses, variances and compensation of any nature whatsoever, whether known or unknown, whether based in tort, contract, in law, admiralty or equity, or other theory of recovery, and whether for compensatory or punitive damages, which against any of them the Plaintiff, and his heirs, executors, administrators, successors and assigns hereafter, and each of them, ever had now has or claims to have, or which may hereafter accrue or otherwise be acquired, for upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Settlement Agreement and Release, including, without limiting the foregoing, the matters alleged in the Complaint (and all related pleadings) in the action entitled <u>S.W., et al. v. City of New York, et al.</u>, in the United States District Court, Eastern District of New York, Civil Docket No. CV-01777-ENV-MDG.

1.2    This release, on the part of the Plaintiff shall be a fully binding and complete settlement between the Plaintiff and the Released Parties, and their respective heirs, assigns and successors.

1.3    The Plaintiff acknowledges and agrees that the release and discharge set forth above is a general release.  Plaintiff expressly waives and assumes the risk of any and all claims for damages which exist as of this date, but of which the Plaintiff does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiff's decision to enter into this Settlement Agreement.  Plaintiff further agrees that he has accepted payment of the

sums specified herein as a complete compromise of matters involving disputed issues of law and fact. Plaintiff assumes the risk that the facts or law may be other than Plaintiff believes. It is understood and agreed to by the parties that this settlement is a compromise of a disputed claim, and the payments are not to be construed as an admission of liability on the part of the Defendants, by whom liability is expressly denied.

**2.0   CONSIDERATION OF MEDICARE'S INTERESTS IN SETTLEMENT PURSUANT TO 42 C.F.R. SECTIONS 411.46, 411.47 AND THE MEDICARE INTERMEDIARY MANUAL (MEDICARE ADDENDUM)**

2.1   This settlement is based upon a good faith determination of the parties to resolve a disputed claim. The parties have not shifted responsibility of medical treatment to Medicare in contravention of 42 U.S.C. Sec. 1395y(b). The parties resolved this matter in compliance with both state and federal law. The parties made every effort to adequately protect Medicare's interest and incorporate such into the settlement terms.

2.2   Plaintiff acknowledges his duty to cooperate with Defendants in order to allow the Responsible reporting entities to fulfill the obligation to comply with Section 111 of the Medicare, Medicaid & SCHIP Extension Act of 2007 (MMSEA). Plaintiff and his attorney agree to provide Defendants with any and all information necessary for Defendants or Payors to comply with Section 111 of the MMSEA.

2.3   In further consideration for the Settlement Agreement and Release to which this Medicare Addendum is included and incorporated herein, Defendants, Payors and their attorneys rely on the following representations and warranties made by Plaintiff and his attorneys and the parties agree that all representations and warranties made herein shall survive settlement.

  i.   Plaintiff in this case is not a Medicare Beneficiary as of the date of this release, nor does plaintiff anticipate becoming a Medicare Beneficiary within 30 months of the date of this release. Because the Plaintiff is not a Medicare recipient as of the date of this release, no conditional payments have been made by Medicare for any medical treatment plaintiff has received as a result of the allegations in the Complaint.

  ii.  Any future medical treatment related to the accident, injuries, or illnesses giving rise to this settlement, and/or arising from or related to the matters forming the basis of the claims by Plaintiff is the sole responsibility of Plaintiff, and will be paid for with the settlement proceeds and will under no circumstances be submitted as claims to Medicare.

2.4    Plaintiff represents and warrants that all bills, costs or liens resulting from or arising out of Plaintiff's alleged injuries, claims or lawsuit are Plaintiff's responsibility to pay. Plaintiff agrees to assume responsibility for satisfaction of any and all rights to payment, claims or liens of any kind (including Medicaid), that arise from or are related to payments made or services provided to Plaintiff or on Plaintiff's behalf. Plaintiff agrees to assume responsibility for all expenses, costs or fees incurred by Plaintiff related to his alleged injuries, claims or lawsuit including without limitation, all Medicare conditional payments, subrogation claims, liens, or other rights to payment, relating to medical treatment or lost wages that have been or may be asserted by any health care provider, insurer, governmental entity, employer or other person or entity. Further, Plaintiff hereby agrees to indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys or representatives harmless from any and all damages, claims and rights to payment, including any attorney's fees, brought by any person, entity or governmental agency to recover any of these amounts.

2.5    Plaintiff and Plaintiff's attorneys further represent and warrant that they are aware of no Medicare conditional payments that have been made on Plaintiff's behalf. Plaintiff and Plaintiff's attorneys agree to exercise best efforts to obtain a letter from Medicare to this effect and provide the same to Defendants' attorneys. In the alternative, and only after exercising best efforts to obtain a zero dollar conditional payment letter from Medicare, Plaintiff and Plaintiff's attorneys agree to provide Defendants' attorneys with a letter certifying that Plaintiff's attorneys have exercised due diligence and, to the best of their knowledge, no liens of any governmental entities including Medicare conditional payments exist.

2.6    Plaintiff will indemnify, defend and hold Defendants, Payors, any other insurers and reinsurers and their attorneys harmless from any and all claims, liens (including Medicaid), Medicare conditional payments and rights to payment, known or unknown. If any governmental entity, or anyone acting on behalf of any governmental entity, seeks damages, including multiple damages, from Defendants, Payors their attorneys or representatives relating to payment by such governmental entity, or anyone acting on behalf of such governmental entity, relating to Plaintiff's alleged injuries, claims or lawsuit, Plaintiff will defend and indemnify Defendants, Payors, any other insurers and reinsurers their attorneys and representatives, and hold them harmless from any and all such damages, claims, liens, Medicare conditional payments and rights to payment, including any attorneys' fees sought by such entities.

2.7    While it is impossible to accurately predict the need for medical treatment, the parties have attempted to resolve this matter in compliance with both state and federal law and it is believed that the settlement terms adequately consider and protect Medicare's interest and do not reflect any attempt to

shift responsibility of treatment to Medicare pursuant to 42 U.S.C. Sec 1935y(b). The parties acknowledge and understand that any present or future action or decision by CMS or Medicare on this settlement, or Plaintiff's eligibility or entitlement to Medicare or Medicare payments, will not render this release void or ineffective, or in any way affect the finality of this liability settlement.

2.8     Plaintiff further agrees to waive any and all future actions against Defendants, Payors, any other insurers and reinsurers, their attorneys and representatives, including but not limited to any private cause of action for damages pursuant to 42 U.S.C. §1395y(b)(3)(A) et seq.

**3.0     Payments**

In consideration of the release set forth above, the Payors on behalf of the Defendants agree to pay to the individual named below (the "Payee") the sums outlined in this section 3 below, contingent upon receiving court approval from the Circuit Court for St. Lucie County, Florida, Probate Division:

3.1     Payments due at the time of settlement as follows:

Cash at settlement: $1,011,735.71 by September 10, 2014, subject to receipt of this executed Settlement Agreement and Release and fully executed closing documents as set forth in the Mediation Agreement dated June 13, 2014.

3.2     Periodic payments made according to the schedule as follows (the "Periodic Payments"):

Payee: ██████████████████████████████

The ███████████████████████████ will be the irrevocable payee of the periodic payments during the lifetime of ███████████████

Life Certain Annuity: $11,090.00 for life, payable quarterly, guaranteed for 25 years, beginning on 10/10/2029, with the last guaranteed payment on 07/10/2054 from New York Life Insurance Company.

Period Certain Annuity: $11,090.00 payable quarterly, guaranteed for 15 years, beginning on 10/10/2014, with the last guaranteed payment on 07/10/2029 from Pacific Life & Annuity Company.

All sums set forth herein constitute damages on account of personal physical injuries or sickness, within the meaning of Section 104 (a) (2) of the Internal Revenue Code of 1986, as amended.

Notice is being provided to the Plaintiff and Payee and their Legal Representative pursuant to New York General Obligation Law § 5-1702 that there are no costs to be deducted from the periodic payments and the Plaintiff and Payee are advised to obtain independent professional advice relating to the legal, tax and financial implications of the settlement, including any adverse consequences.

### 4.0    Plaintiff's Rights of Payments

Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee; nor shall the Plaintiff or Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

### 5.0    Plaintiff's Beneficiary

Any payments to be made after the death of any Payee pursuant to the terms of this Settlement Agreement shall be made to such person or entity as shall be designated in writing by Plaintiff to the Payors or the Payors' Assignees, as defined below.  If no person or entity is so designated by Plaintiff, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee.  No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Payors or the Payors' Assignees.  The Designation must be in a form acceptable to the Payor or the Payors' Assignee before such payments are made, but in no event shall the request of the payee be unreasonably withheld or denied.

The beneficiary will receive 100% of the remaining guaranteed periodic payments in a lump sum. The commuted value will be equal to 94% of the cost of the Certificate that would provide for all guaranteed payments that have been commuted. We will compute the cost using the annuity rated in effect on the date of the death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable.

If annuity rated are not available, the commuted value shall be the present value of the commuted payments, discounted at the yield of the longest Treasury Constant Maturity Rate as published by the Federal Reserve at the close of business on the date of death of the Payee or Annuitant (or last surviving Joint Payee or Joint Annuitant), as applicable, plus one percent. If this date is not a business day, then the rates reported on the next business day will be used

Any Payments made after the death of ███████████ will be paid to the ███████████ Irrevocable Trust in a single lump sum.  The single lump sum will be equal to 95% of the cost of an annuity contract, based on Pacific Life Insurance Company's structured settlement rates in effect on the date of death, which would provide benefits equal to 100% of the remaining guaranteed payments.

If such annuity rates are not available, the commuted value shall be the present value of the remaining guaranteed payments calculated using the following interest rate: the

annual effective yield based on the current bid price as reported in the Wall Street Journal for the highest yielding U.S. Treasury Note or Bond with a maturity date not exceeding the Rider Expiry Date available at the close of business on the date of ██████████ death plus one percent. If this date is not a business day, the rates reported on the next following business day will be used.

## 6.0 Consent to Qualified Assignment

6.1 Plaintiff acknowledges and agrees that the Defendants and/or Payors may make a "qualified assignment", within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the Defendant's and/or Payors' liability to make the Periodic Payments set forth in Section 3.2 to New York Life Insurance and Annuity Corporation and Pacific Life & Annuity Services, Inc. ("The Assignees"). The Assignees' obligations for payment of the Periodic Payments shall be no greater than that of Defendants and/or Payors (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligations.

6.2 Any such assignment, if made, shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendants and the Payors from the Periodic Payments obligations assigned to the Assignees. The Plaintiff recognizes that, in the event of such an assignment, the Assignees shall be the sole obligors with respect to the Periodic Payments obligations, and that all other releases with respect to the Periodic Payments obligations that pertain to the liability of the Defendants and the Payors shall thereupon become final, irrevocable and absolute.

## 7.0 Right to Purchase an Annuity

The Defendants and/or the Payors, themselves or through their Assignees reserve the right to fund the liability to make the Periodic Payments outlined in Section 3.2 through the purchase of annuity policies from New York Life Insurance Company and Pacific Life & Annuity Company. The Defendants, the Payors or the Assignees shall be the sole owner of the annuity policies and shall have all rights of ownership. The Defendants, the Payors, or the Assignees may have New York Life Insurance Company and Pacific Life & Annuity Company mail payments directly to the Payee. The Plaintiff shall be solely responsible for maintaining a current mailing address for the Payee with the Assignees.

## 8.0 Discharge of Obligation

The obligation of the Defendants, the Payors and/or Assignees to make each periodic Payment shall be discharged upon the mailing of a valid check in the amount of such payment to the designated address of the Payee named in Section 3.0 of this Settlement Agreement.

**9.0    Delivery of Dismissal with Prejudice**

Concurrently with the execution of this Settlement Agreement, counsel for the Plaintiff shall deliver to counsel for the Defendants or counsel for the Payors an executed Stipulation of Voluntary Dismissal with Prejudice Pursuant to FRCP 41(a)(1)(A)(ii).  Plaintiff hereby authorizes counsel for the Defendants and/or counsel for the Payors to file said Stipulation with the Court and enter it as a matter of record once all upfront cash payments have been made and annuities funded as called for in this Settlement Agreement and Release.

**10.0    Representation of Comprehension of Document**

In entering into this Settlement Agreement, the Plaintiff represents that Plaintiff has relied upon the advice of his attorneys, who are the attorneys of his own choice, concerning the legal consequences of this Settlement Agreement and Release; that the terms of this Settlement Agreement and Release have been completely read and explained to Plaintiff by his attorneys; and the terms of the Settlement Agreement and Release are fully understood and voluntarily accepted by Plaintiff.

**11.0.    Warranty of Capacity to Execute Agreement**

Plaintiff represents and warrants that no other person or entity has, or has had, any interest in the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release, except as otherwise set forth herein; that Plaintiff has the sole right and exclusive authority to execute this Settlement Agreement and Release and receive the sums specified in it; and that Plaintiff has not sold, assigned, transferred, conveyed, or otherwise disposed of any of the claims, demands, obligations or causes of action referred to in this Settlement Agreement and Release.

**12.0    Governing Law**

This Settlement Agreement and Release shall be construed and interpreted in accordance with the laws of the State of New York.

**13.0    Additional Documents**

All parties agree to cooperate fully and execute any and all supplementary documents and to take all additional actions, which may be necessary or appropriate to give full force and effect to the basic terms and intent of this Settlement Agreement and Release.

**14.0    Entire Agreement and Successors in Interest**

This Settlement Agreement and Release contains the entire agreement between the Plaintiff, the Defendants and the Payors with regard to the matters set forth in it and shall

be binding upon and inure to the benefit of the executors, administrators, personal representatives, heirs, successors and assigns of each.

**15.0    Effectiveness**

This Settlement Agreement and Release shall become effective immediately following execution by each of the parties.

Plaintiff:    _____

████████████████████████

███████████

Date:_____

STATE OF FLORIDA                    )
COUNTY OF HILLSBOROUGH      ) ss:

On the ___ day of _____, 2014 before me, the undersigned, a notary public in and for said state, personally appeared ██████████████, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within SETTLEMENT AGREEMENT and RELEASE, and acknowledged to me that she executed the same in her capacity, and that by her signature on the SETTLEMENT AGREEMENT and RELEASE, the individual, or the person upon behalf of whom the individual acted, executed the SETTLEMENT AGREEMENT AND RELEASE.

Sworn to before me this
_____ day of _____, 20___

_____
        Notary Public
                Plaintiff's Attorney:      _____

By:_____

Address:      _____

_____

Date:    _____

Payors:  National Union Fire Insurance Company of Pittsburgh, PA
         Illinois National Insurance Company

        By:_____

        Date:_____